817 A.2d 20 (2002)
In re A.D.T., Juvenile.
No. 02-124.
Supreme Court of Vermont.
November 1, 2002.
*21 Allison N. Fulcher of Martin & Associates, Barre, for Appellant Father.
Michael Rose, St. Albans, for Appellant Mother.
William H. Sorrell, Attorney General, Montpelier, and Les Birnbaum, Assistant Attorney General, Waterbury, for Appellee.
Present: AMESTOY, C.J., and DOOLEY, MORSE, JOHNSON and SKOGLUND, JJ.
*22 SKOGLUND, J.
The Chittenden Family Court terminated mother's parental rights in A.D.T. and B.D. in June 2001, and terminated father's rights in A.D.T. in a separate order issued in February 2002. Mother's attorney did not appeal the June 2001 termination decision as she requested, and she now asks this Court to reinstate her appeal rights and reverse the termination order. Although we take jurisdiction over mother's appeal, we affirm the order terminating her rights to both children. We also affirm the court's order terminating father's rights in A.D.T.
The factual and procedural complexity of this appeal requires a somewhat detailed recitation of the facts and circumstances below. Mother gave birth to B.D. on October 5, 1994. In November 1997, B.D. came into the custody of the Commissioner of the Department of Social and Rehabilitation Services ("SRS"), along with B.D.'s younger brother J.D.[1] Prior to their placement in SRS custody, the children lacked stable housing, and mother was involved in criminal activity, struggled with substance abuse problems, and had other mental health issues bearing on her ability to parent. In October 1998, mother had made enough progress on her SRS-prepared plan of services that the agency placed B.D. back in mother's care. By February 1999, mother's progress stagnated. She spent two days in prison for a probation violation, and, without informing SRS, left B.D. with an inappropriate caregiver. She discontinued counseling, quit her job, and tested positive for opiates at the end of March. SRS removed B.D. from mother's care once again on April 20, 1999. On April 22, mother took B.D. from day care and fled Vermont. Five days later, mother was arrested in Chicago and charged with custodial interference. On June 29, 1999, SRS moved to terminate mother's rights to B.D. and J.D. On December 10, 1999, mother was sentenced to serve one to four years on the custodial interference charge. At that time, mother was pregnant with A.D.T.
A.D.T. was born on December 22, 1999 while mother was incarcerated. SRS removed the child from mother's care immediately upon her birth. The trial court adjudicated A.D.T. a child in need of care and supervision ("CHINS") on February 8, 2000. The next month, SRS petitioned to terminate mother's parental rights to the child, but not the rights of A.D.T.'s father, who was unknown at the time.
Between April 1999 and December 2000, mother was in and out of prison. While out on furlough in June 2000, mother sought visitation with her children. She had not seen B.D. since April 1999 and last saw A.D.T. when the child was born. The court denied mother's request. It noted that termination petitions were pending, a significant question existed about mother's compliance with the case plan, and resumption of contact could be disruptive for the children in light of mother's lack of contact with them. The court decided that it would determine the appropriateness of visitation after evidence in the termination hearing was presented, effectively denying mother's request during the pendency of the proceeding. Sometime after the order, mother violated her furlough and was reincarcerated.
Hearings on the termination petitions concerning mother's parental rights took place in September, October, and November 2000. In December 2000, father's paternity *23 of A.D.T. was finally established. Mother was on furlough at that time, but on January 21, 2001, she left Vermont for Nevada. In April 2001, mother wrote her attorney and stated her intent to appeal the order she anticipated would flow from the termination hearings.
The court issued its termination order regarding mother's rights in B.D. and A.D.T. on June 14, 2001.[2] Despite mother's April 2001 letter, her attorney did not file a notice of appeal within thirty days of that order. During the appeal period, mother was incarcerated in Reno, Nevada. She returned to Vermont pursuant to an extradition proceeding on August 2, 2001. On August 31, 2001, mother's attorney notified her of the June 14, 2001 termination order for the first time. As a result, mother wrote the court in early September and October asking to appeal the June termination order. She explained that she did not know about the June order until August 31, 2001. The court took no immediate action on either request.
SRS's petition to terminate father's rights in A.D.T. was filed in July 2001 and heard on December 14, 2001. Father was not present at the hearing, although his attorney was. The court terminated father's rights in a February 19, 2002 order. The court found that father had refused to participate in disposition planning for A.D.T., did not return phone calls from the SRS caseworker assigned to the case, had not contacted the caseworker to inquire about A.D.T.'s well being, and has never had any contact with A.D.T. since her birth. The court concluded that termination of father's rights in A.D.T. was warranted because clear and convincing evidence established that father is neither willing nor available to provide a home for A.D.T., and that there was no reasonable likelihood that father could become a parent to the child within a reasonable period of time.
Two days after the court terminated father's rights, and through new counsel the court appointed for mother in January 2002, mother filed a motion under 33 V.S.A. § 5532 to vacate or modify disposition of A.D.T. and B.D. In her motion, mother asked the court to reissue the June 14, 2001 termination order to give her another opportunity to appeal in light of her original counsel's failure to file a timely appeal. The court denied the motion on March 13, 2002. On March 15, 2002, father appealed the February 19, 2002 order terminating his rights in A.D.T. On March 27, 2002, mother filed a notice of appeal purporting to appeal the (1) March 13, 2002 order denying her motion to vacate/modify, (2) February 19, 2002 order terminating father's rights in A.D.T., and (3) June 14, 2001 order terminating mother's rights in B.D. and A.D.T.[3]
We first address mother's claim that she is entitled to appeal the family court's June 14, 2001 decision terminating her rights to B.D. and A.D.T. notwithstanding the fact that her notice of appeal was filed outside the thirty-day time period. Mother presents two rationales for reinstating her otherwise lost appeal *24 rights. First, as to A.D.T., mother argues that her notice of appeal was timely because she filed it within fourteen days of father's notice of appeal. See V.R.A.P. 4 (if a timely notice of appeal has been filed by a party, any other party may file a notice of appeal within fourteen days of the first notice). She asserts that the rights of both parents must be terminated and the child freed for adoption before an order terminating one parent's rights becomes final and appealable. Second, mother argues that her lawyer's failure to follow her directive to appeal the June 14, 2001 order was per se ineffective assistance of counsel, and she is entitled to an appeal as a matter of law by showing only that she would have taken the appeal absent her lawyer's omission. We address each argument in turn.
An appealable order is one that finally disposes of the matter before the court by settling the rights of the parties on issues raised by the pleadings. Woodard v. Porter Hosp., Inc., 125 Vt. 264, 265, 214 A.2d 67, 69-70 (1965). In this case, SRS moved to terminate mother's rights before the identity of A.D.T.'s father was known, and his rights were not subject to the termination petition. Thus, the subject matter before the court was mother's rights only in A.D.T. Once the court severed her legal relationship with the child, the matter before the court was finally and conclusively determined. Although the juvenile court retained jurisdiction over A.D.T. after the June 14 order, that retention does not affect our appellate jurisdiction over a disposition order terminating parental rights in a child. See V.R.F.P. 12(d)(2)(C) (when an appeal is taken in a juvenile case, juvenile court retains jurisdiction to modify or vacate its disposition order during pendency of appeal). Moreover, in CHINS cases such as this, each petition to terminate parental rights after initial disposition commences a new and separate proceeding, even if the docket number does not change. In re E.W., 169 Vt. 542, 544, 726 A.2d 58, 61 (1999) (mem.). Thus, SRS's July 2001 petition to terminate father's rights was a new and separate proceeding from the earlier termination proceeding involving mother.
There are important policy reasons supporting our conclusion that a parent whose rights have been terminated need not wait until the other parent's rights are terminated before appealing the termination order. Juvenile court disposition orders, including termination orders, are not automatically stayed during the appeal period as are most other civil orders. V.R.F.P. 12(a)(2)(C). Upon termination, therefore, SRS has no obligation to include that parent in further case planning for the child, allow visitation, or make any efforts to reunify the child with the parent. Without an immediate appeal, the child's interest in finality cannot be met, and the parent's interest in resuming a relationship with the child if the termination order was erroneous is severely impaired. In a case like this where one parent's identity is unknown, there may be a significant time period between the termination of the known parent's rights and the final adjudication of the other parent's rights. The passage of time in that instance could work an even greater hardship on the parties if an appeal must wait. Indeed, under mother's theory, until the rights of the other parent are terminatedan event that may never occurthe parent whose rights were terminated first would have no opportunity to appeal. That result is simply untenable. There may be an occasion we cannot now anticipate when a court adjudicating the rights of both parents in one proceeding issues separate orders regarding each parent which might affect the time period for *25 appeal, but that situation is not present in this case. With respect to mother, therefore, the June 14, 2001 order terminating her rights in A.D.T. was final and appealable. Her attempt to appeal that order by filing a notice of appeal fourteen days after father's appeal from the February 19, 2002 order terminating his rights was ineffective.
Mother also claims that she should be heard on the merits of her untimely appeal of the June 14, 2001 order with respect to B.D. and A.D.T. because she did not receive effective assistance of counsel. We decline to decide whether, and under what circumstances, a parent may raise an ineffective-assistance-of-counsel claim in a termination proceeding under Title 33. We conclude, however, that the facts of this particular case require us to invoke our authority under 4 V.S.A. § 2(b) to reach the merits of mother's appeal as "necessary to the furtherance of justice." See 4 V.S.A. § 2(b) (Supreme Court has jurisdiction "to issue all ... orders that may be necessary to the furtherance of justice"); In re J.C., 169 Vt. 139, 145, 730 A.2d 588, 592 (1999) (invoking 4 V.S.A. § 2(b) to reinstate lost appeal rights in superior court in probate action to avoid unduly harsh result); see also In re T.M.C., 26 Kan.App.2d 297, 988 P.2d 241, 244 (1999) (determining that fundamental fairness requires appellate court to hear mother's appeal from termination of parental rights order where mother's attorney failed to inform her of appeal period and took no action to file a timely appeal on her behalf). In this case, it is undisputed that mother wrote her attorney prior to the June 2001 decision asking him to appeal the anticipated order. In explaining to the trial court his failure to follow mother's directive, mother's attorney stated that he simply missed the appeal deadline and there was "really no excuse for it." Mother wrote the court asking for permission to appeal the June 2001 order within days of being informed of the court's decision following her return to Vermont from Nevada. When the court did not respond, mother wrote again reiterating her desire to appeal the termination decision. Mother was thus reasonably prompt in attempting to perfect her appeal after she received notice of the decision. Considering the important rights at stake in this case, the reasons for mother's untimely appeal, and the fact that the parties have argued the merits of mother's appeal in their briefs, we address the substance of mother's appeal to advance the interests of justice and fundamental fairness.
Although we find good reason to address the merits of mother's appeal, we find no error in the court's decision to terminate her rights in both B.D. and A.D.T. The court has discretion to determine whether termination is in the child's best interests. In re D.M., 162 Vt. 33, 38, 641 A.2d 774, 777 (1994). We will uphold a termination order if the court's findings are not clearly erroneous and support the court's conclusions. Id.
Mother argues that the court's termination order relies too heavily on her lack of contact with the children because the court denied her request for visitation. She claims that our decision in In re D.P., 147 Vt. 26, 510 A.2d 967 (1986), precludes the court from using its denial of visitation against mother in determining whether to terminate her rights. Mother's argument is unpersuasive. First, mother reads In re D.P. too broadly. In that case, we explained that if the juvenile court denies parent-child contact pending an appeal from an order terminating parental rights, and the order is later reversed by this Court, the lack of contact pending appeal cannot be used against the parent in a later termination proceeding. 147 Vt. at *26 33, 510 A.2d at 971. In this case, mother's claim focuses on a different time period in the termination process. In contrast to In re D.P., mother's lack of contact resulted first and foremost from her own conduct prior to the termination decision. That conduct caused mother's repeated imprisonment and her consequent estrangement from B.D. and A.D.T. Notably, mother does not argue that it would have been appropriate for her to have contact with the children while she was in prison, nor does she claim that the court erred by denying her visitation while the termination petitions were pending.
Second, the court's order reflects that it considered all relevant factors in deciding that termination was in B.D. and A.D.T.'s best interests, and that it did not rely primarily on the lack of a relationship between mother and the children in reaching its decision. See 33 V.S.A. § 5540 (court must consider the child's best interests when considering a petition to terminate parental rights to the child). On the most important statutory factor, mother's ability to resume her parental duties within a reasonable time, see In re B.M., 165 Vt. 331, 336, 682 A.2d 477, 480 (1996) (critical factor in termination of parental rights case is whether parent can resume parental duties within a reasonable period of time), the court noted that mother's initial progress on the plan of services suffered from her lack of follow through. She made impulsive decisions that foreclosed parenting opportunities as reflected in her ongoing criminal behavior and repeated imprisonment. Mother demonstrated an inability to make her children's needs a priority over her own, and failed to comprehend how her behavior had an impact on them. She stopped counseling and lacked a stable residence. The court found that at the time of the termination hearing mother was not able to offer the children stability or permanence, and that she lacked the prospective ability to become a parent to B.D. and A.D.T. within a reasonable period of time. Mother does not challenge those findings, which we conclude amply support the court's decision to terminate mother's parental rights.
Mother also argues that it was error to terminate her rights in A.D.T. because it was unnecessary to do so. Mother posits that because the rights of A.D.T.'s father remained intact after the June 2001 order, the court should have allowed her to continue to work towards reunification. Again, whether it was in A.D.T.'s best interests to terminate mother's rights was a matter left to the trial court's discretion, which we have just determined the court exercised properly. We find no reason to change our conclusion based on the fact that A.D.T.'s father's rights had yet to be determined as discussed previously.
We turn now to father's appeal. Father claims the court erred because no clear and convincing evidence established that he was unfit to resume his parental duties within a reasonable period of time. We disagree. The evidence in the record firmly establishes that father has had no personal, custodial, or financial relationship with A.D.T., and has not demonstrated any interest in being a parent to the child. Father's claim here is ironic because he never assumed his parental duties to A.D.T. in the first place. We reject father's assertion that in cases like this where a parent has never met his child, refused to participate in the case planning process for the child, and failed to demonstrate the slightest interest in the child's well being or circumstances, the juvenile court must have some evidence about the parent's parenting abilities before severing the legal parent-child relationship. A parent who has completely refused to have any relationship with, or to *27 take responsibility for, his child, as father has done with respect to A.D.T., is per se unable to resume his parental duties, and termination is appropriate if the court determines the child's best interests require it. The court so concluded in this case, and there was no error.
Affirmed.
NOTES
[1] B.D. and J.D. do not share the same father. The rights of each child's father is not at issue in this appeal.
[2] The court found sufficient evidence to terminate mother's rights in J.D., but it concluded that doing so was unnecessary at that time due to its decision not to terminate the rights of J.D.'s father. The court did eventually terminate mother's rights in J.D. on January 28, 2002, and this Court affirmed that order on June 27, 2002. Mother's rights in J.D. are therefore not at issue in this appeal.
[3] Mother's notice of appeal referred to B.D. and J.D. which is perplexing because the June 14, 2001 order did not terminate her rights in J.D. We therefore assume mother meant A.D.T.