*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-381

DECEMBER TERM, 2013

| | |
|---|---|
| In re J.F., Juvenile | }    APPEALED FROM: |

}    Superior Court, Windsor Unit,
}    Family Division

}    DOCKET NO. 26-3-13 Wrjv

Trial Judge: Howard A. Kalfus, Acting
Judge, Specially Assigned

In the above-entitled cause, the Clerk will enter:

Mother appeals the termination of her parental rights to her son J.F. On appeal, mother argues that the family court failed to resolve whether mother was responsible for failing to gain information about J.F.'s developmental needs, and that the findings and evidence do not support the court's conclusion that mother's missed visits were detrimental to J.F. We affirm.

The family court found the following facts. J.F. was born in 2004 to mother; his father's identity is unknown. J.F. was diagnosed as being on the autism spectrum at age four and a year later the diagnosis was categorized as Asperger's syndrome. More recently, he has been diagnosed with attention deficit hyperactive disorder (ADHD) and post-traumatic stress disorder (PTSD).

In August 2009, mother transferred guardianship of J.F. to friends in New Hampshire because mother was unable to care for him for various reasons including homelessness. Following a report of abuse, New Hampshire social services removed J.F. from that home and placed him in foster care. In August 2011, J.F. was reunited with mother. At the time, mother was living with her boyfriend and their child, born in 2010. That relationship ended after an incident of domestic abuse. Mother then had a friend stay with her, but DCF informed mother that the man was being investigated for sexual abuse and his parental rights to his own children were being terminated. Mother began the process of transferring guardianship of J.F. to another friend.

The Vermont Department for Children and Families (DCF) sought temporary custody of J.F. in March 2012. In support, DCF cited mother's failure to recognize the impact on J.F. from his traumatic experiences and several placement disruptions, mother's lack of appropriate housing, mother's failure to maintain consistent contact with her children, and mother's failure to obtain counseling. Based on a stipulation, J.F. was adjudicated a child in need of care or supervision (CHINS) in April 2012. The disposition order continued custody with DCF. DCF's case plan recommended reunification with mother, and required her to engage in mental health counseling, participate in a substance-abuse assessment, participate in J.F.'s therapy and special education services, maintain employment, and maintain regular contact with J.F.

DCF established a visiting schedule for mother and employed a family time coach. Mother began a pattern of missing approximately half of the visits and being late for those she did attend. Because mother came late, pre-visit sessions with the family time coach were frequently not possible. J.F. reacted in different ways to missed visits; sometimes he was happy and other times he was introspective and sad. The family court concluded that "missed visits impact him negatively."

Although mother has a history of opiate and cocaine use, the court found that mother's cocaine use ended twelve years ago and opiate use eight years ago. The court found that mother was not currently abusing any substance. Mother failed to engage in individual counseling as required by the prior disposition order. Mother did not engage with J.F.'s mental health providers or follow up on their recommendations for J.F., as required. The court found that J.F.'s counselor and the DCF social worker did not make this opportunity available to mother. The court also noted that there was little interaction between DCF and mother and no adequate explanation for this was provided.

During his time in DCF custody, J.F. unfortunately moved three times. He is well adapted in his current placement. He displays affection to his foster mother and she wants to adopt him if he is freed for adoption. He is involved in his community and is making progress with his counselor.

DCF filed a petition to terminate mother's rights in January 2013. Following a hearing in August 2013, the court granted the petition.

The court credited mother for securing safe and stable housing. The court found, however, that J.F. needs consistency, and mother's failure to visit on a consistent basis must create "feelings of loss, confusion and perhaps even abandonment" for J.F. The court found that the lack of contact, especially in light of the fact that J.F. spent half his life being cared for by someone other than mother, combined to create a situation where there is not a significant bond between J.F. and mother. The court concluded that there was a change in circumstances based on stagnation because mother is not any closer to meeting J.F.'s emotional and developmental needs. The court found mother does not play a constructive role in J.F.'s life and will not be able to resume parenting within a reasonable period of time, and therefore concluded termination was in J.F.'s best interests. Mother appeals.

Termination of parental rights involves a two-step analysis. As a threshold to altering the prior disposition, the court must consider whether there has been a substantial change in material circumstances. 33 V.S.A. § 5113(b). A change of circumstance occurs "when a parent's ability to care for a child has either stagnated or deteriorated over the passage of time." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.) (quotation omitted). If this threshold is satisfied, the court must then consider whether termination is in the child's best interests. 33 V.S.A. § 5114(a) (listing statutory best-interests factors).

On appeal, mother first argues that the court erred in concluding mother's progress had stagnated because the court failed to resolve whether DCF was to blame for mother's lack of information about J.F.'s developmental needs. See In re S.R., 157 Vt. 417, 421-22 (1991) (recognizing that "stagnation caused by factors beyond the parents' control could not support termination" while rejecting parents' claim that State's failure to provide adequate services contributed to stagnation). According to mother, there is uncontested evidence that DCF failed to encourage or facilitate mother's participation in J.F.'s counseling or to arrange for parenting

classes on the developmental needs of children with Asperger's. Mother contends that because DCF failed to make an effort to engage mother in these programs, her inability to meet J.F.'s emotional and developmental needs resulted from actions beyond her control. The court found that mother had failed to participate in J.F.'s counseling, but did not resolve the reasons for mother's lack of participation, explaining "[r]egardless of where the blame for this lies, [mother] is woefully uninformed with respect to [J.F.]'s developmental needs."

We conclude that there was no error. See In re A.G., 2004 VT 125, ¶ 19, 178 Vt. 7 (explaining that decision on substantial and material change in circumstances is within sound discretion of family court). The court was not required to resolve the question of whether mother's failure to engage in counseling was due to her own actions because the court's finding that mother had stagnated in her ability to parent J.F. was based on other circumstances within mother's control. "Stagnation is shown by no improvement or the lack of sufficient improvement over time." Id. Here, the court's finding of stagnation was based on mother's lack of improvement in creating a bond with J.F. and in being prepared to parent him. Part of parenting J.F. involves understanding his emotional and developmental needs. Apart from mother's failure to engage with J.F.'s therapist and participate in J.F.'s counseling, the court found that much of mother's lack of progress in these areas stemmed directly from mother's failure to consistently attend visits and to productively engage with the family-time coach. As the court explained, mother's shortcomings regarding her lack of information was attributable more "to missing visits than to missing meetings." The court found, and mother does not contest, that since J.F. has been in custody she has missed on average half of the visits offered, and been late to many of those she attended. Because of missed visits, there is no consistency in mother's relationship with J.F., the bond between them is deteriorated, and mother is unable to meet J.F.'s emotional needs. See In re A.D.T., 174 Vt. 369, 376 (2002) (holding that mother's lack of contact with children stemmed from her own conduct and could form basis for terminating parental rights). Mother's failures to consistently attend visits and to engage with the parent coordinator were matters within her control, and independently caused stagnation in her ability to parent J.F.

Mother next argues that the evidence and findings do not support the court's conclusion that mother's missed visits are detrimental to J.F. "Individual findings of fact will stand unless clearly erroneous, and conclusions of law will be upheld if supported by the findings. When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence." In re A.F., 160 Vt. 175, 178 (1993) (citation omitted). Mother points particularly to the following part of the court's order:

> [J.F.] reacts to the missed visits in various ways. At times he is happy to have a visit cancelled. At times he is introspective and appears sad. The logical conclusion is that the missed visits impact him negatively. This would be true for any child, but especially so for [J.F.] as he is in particular need for consistency.

The court also found that "[J.F.] is old enough to know that he is coming to a visit or that a visit is scheduled and there must be feelings of loss, confusion and perhaps even abandonment when those visits have to be cancelled." Mother contends that the evidence does not support that J.F. was sad about missed visits more frequently than happy. She points to testimony at trial from the family-time coach, who testified that when mother did not attend a visit, J.F. reacted with happiness. In addition, J.F.'s current foster mother stated that when informed of a missed visit, J.F. once was indifferent and once appeared hurt.

3

According to mother, this evidence is insufficient to demonstrate that mother's missed visits impacted J.F. negatively. We conclude there was no error. Evidence supported the court's finding. While the family-time coach testified that J.F. was happy when visits were cancelled, she also explained that there is a general policy that visits are cancelled if a parent does not appear after fifteen minutes because it is emotionally difficult for children to show up expecting a visit and not have it happen. Although J.F.'s therapist explained that J.F. had not talked to her about his mother's missed visits, she testified that J.F. does not react well to unanticipated changes, and posited that mother's late and missed visits would likely make him upset and unhappy. In addition, J.F.'s foster mother testified that J.F. was outwardly indifferent at times and really hurt one other time when his mother missed visits.

Moreover, the key issue here is not whether J.F. was immediately happy or sad at the times when his mother did not attend their visits. The trial court's finding of stagnation was based upon its conclusion that mother's lack of consistent participation in visits with J.F. prevented the formation of a bond between mother and J.R. in the near future.

The court can make reasonable inferences from the evidence and can use its common sense. See In re B.C., 2013 VT 58, ¶ 22 (court can draw reasonable inferences from evidence); Payrits v. Payrits, 171 Vt. 50, 53 (2000) (explaining that in assessing child's welfare court may "draw upon its own common sense and experience in reaching a reasoned judgment"). The court's finding that mother's missed visits affected J.F. negatively is a reasonable inference to be drawn from the above testimony and the facts that J.F. was old enough to know when a visit was scheduled, J.F. particularly needs consistency, J.F. has Asperger's, ADHD and PTSD, and J.F. does not readily show emotion or affection. Because credible evidence supports the court's finding and related conclusion, there was no error.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice