2015 VT 45

## In re C.F., Juvenile

[117 A.3d 819]

No. 14-364

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed February 27, 2015

*Michael Rose*, St. Albans, for Appellant Mother.

*Matthew F. Valerio*, Defender General, and *Rebecca Turner*, Appellate Defender, Montpelier, for Appellee Juvenile.

*William H. Sorrell*, Attorney General, Montpelier, and *Martha E. Csala* and *Katherine D. Lucier*, Assistant Attorneys General, Waterbury, for Appellee State.

¶ 1. **Reiber, C.J.** Mother appeals a decision of the superior court, family division terminating her parental rights with respect to her son, C.F. She argues that the decision, which was based in part on the family division's view that C.F. has an immediate need for permanency, is irrational in light of the court's contemporaneous decision not to terminate the parental rights of C.F.'s father. Although C.F. originally filed the termination petition, which was later joined by the Department for Children and Families (DCF), and did not appeal the family division's decision to terminate mother's parental rights, he also has filed a brief asking this Court to reverse that decision based on the court's failure to solicit the opinions of C.F.'s attorney and guardian ad litem (GAL) at the termination hearing. We affirm.

¶ 2. The family division's findings, which are not in dispute in this appeal, reveal the following facts. C.F. was born in January 2011. In May 2013, as the result of his parents' addiction to heroin, C.F. was found to be a child in need of care or supervision (CHINS) and was placed in the conditional custody of his paternal grandmother, with whom he had been living since December 2012. At the time C.F. came into DCF custody, mother had not been actively parenting him. She had struggled with a heroin addiction for over a decade from the time she was nineteen years old. As the result of her drug use, mother has a lengthy criminal record and has had periods of incarceration. She also has mental health problems that went unaddressed until shortly before the termination hearing.

¶ 3. When DCF was granted custody of C.F. in May 2013, mother and father were together and homeless. The family division eventually issued a no-contact order between mother and C.F. because of mother's ongoing heroin use and failure to engage

in treatment. For most of the time between May 2013 and April 2014, mother's whereabouts were unknown. She did not attend court hearings regarding C.F. and did not engage in the DCF case plan adopted by the court.

¶ 4. In February 2014, C.F.'s attorney filed a petition seeking termination of mother's and father's parental rights. In March 2014, mother was incarcerated as the result of an outstanding arrest warrant that listed twenty-seven pending charges against her. While incarcerated, mother attended a residential drug-treatment program. She was admitted to the program in mid-March 2014 and discharged the following month, at which time she agreed to participate in the treatment court program. In April 2014, DCF joined the termination petition filed by C.F.'s attorney. At the time of the termination hearing in August 2014, the twenty-seven charges against mother were still pending, and she was awaiting a change-of-plea hearing. Mother did not request that the no-contact order with C.F. be lifted until the day of the termination hearing.

¶ 5. For his part, father made little or no progress toward reunification with C.F. during 2013, but then began making significant progress beginning in January 2014 when he returned to a residential drug-treatment program. From then until the termination hearing, he was engaged in drug treatment, was compliant with probation conditions, and helped his mother with C.F.'s daily care.

¶ 6. Following the termination hearing, the family division issued two orders one day apart. In the first order, the court granted the termination petition as to mother, concluding that she had not played a constructive role in C.F.'s life and would not be able to resume her parental duties within a reasonable time from C.F.'s perspective because of her long history of relapse into drug addiction. In the second order, the court denied the termination petition as to father, concluding that in recent months he had played a constructive role in C.F.'s life and showed signs of being able to resume his parental duties within a reasonable period of time.

¶ 7. Mother appeals the family division's first order, arguing that the order is irrational in light of the second order. C.F. did not file a notice of appeal of either order, but has filed a brief joining mother's brief and asking this Court to reverse the family division's order as to mother. He argues that the court failed to

ask C.F.'s attorney and GAL to give their opinions as to whether termination of mother's parental rights was in his best interests.

¶ 8. We first examine mother's argument. She contends that the family division's decision to terminate her parental rights is irrational, and thus constitutes an abuse of discretion because: (1) it terminates her parental rights in part due to C.F.'s need for permanency, and yet at the same time delays permanency for C.F. by not terminating father's parental rights; and (2) it foresees the real possibility of father resuming his parental responsibility for C.F., and yet terminates her parental rights despite father's testimony that he had recently reconciled with mother. In mother's view, it makes no sense to terminate her parental rights at this juncture when the court will hold another hearing in the future to assess father's continued progress. According to her, at that time, the court can reevaluate her progress without any harm to C.F., who in any case will remain in the custody of his paternal grandmother.

¶ 9. Upon review of the record, we conclude that the family division's decision to terminate mother's rights while preserving father's rights at this juncture was rationally based on clear and convincing evidence. At a termination hearing, the family division is required to consider the best interests of the subject child by examining: (1) the child's interaction and interrelationship with parents and other designated persons affecting his or her interests; (2) the child's adjustments to home, school, and community; (3) the likelihood of the parent being able to resume parental duties within a reasonable period of time; and (4) whether the parent has played and continues to play a constructive role in the child's welfare through, among other things, personal contact and demonstrated emotional support and affection. 33 V.S.A. § 5114(a).

¶ 10. With regard to mother, the court found that for a period of several months after C.F. was placed in DCF custody in May 2013, mother's whereabouts were unknown and she had had no contact with C.F. or DCF. Mother was incarcerated in March 2014 on various charges, including possession of heroin, and had twenty-seven charges pending against her at the time of the termination hearing. At that time, mother was unemployed, had not attained her own housing or any stability in her life, had not been able to maintain a relationship with C.F. because of her drug use, and had not requested a lifting of a previous no-contact order with C.F. until the day of the termination hearing.

¶ 11. The court found that mother continued to have little insight into how her drug use and resulting lack of contact with C.F. had impacted the child. The court noted mother's recent reentry into a drug treatment program, but also pointed out her long history of drug use and relapses. The court found that mother's drug use had resulted in her essentially abandoning her parental duties and absenting herself from court proceedings concerning C.F. The court concluded that mother had not played a constructive role in C.F.'s life, had failed to work with DCF on any of the disposition plan goals, and was unlikely to be able to resume parental duties within a reasonable period of time from the perspective of C.F., who needed permanency and stability in his life.

¶ 12. Mother does not dispute any of these findings and conclusions, which are supported by the record and which, in turn, support the court's termination order. Rather, she argues only that terminating her parental rights makes no sense in light of the court's second order denying the petition to terminate father's parental rights.

¶ 13. We reject mother's contention that her and father's respective situations are comparable. The evidence supports the court's findings and conclusions contrasting mother's and father's situations. The court found that, since January 2014, father had been actively engaged in drug treatment and had remained drug free from that time up until the termination hearing in August 2014. Moreover, since January 2014, he had seen C.F. on a daily basis and had been actively engaged in his care. The court found that during that relatively lengthy period of time, father had shown insight into how his drug addiction had impacted C.F. and had consistently played a positive role in the child's life. Given the court's findings and conclusions, there is nothing irrational or contrary to the applicable statutory law in the court's decisions to grant the termination petition with respect to mother but deny the petition with respect to father.

¶ 14. ■ We reject mother's argument that it makes no sense to terminate her parental rights due to C.F.'s need for permanency while at the same time delaying permanency by not terminating father's parental rights. The family division found it was in C.F.'s best interests to terminate mother's parental rights under the relevant statutory criteria for multiple reasons, only one of which

was C.F.'s need for permanency. The fact that father retains residual parental rights as the result of the family division's second order did not prevent the court from terminating mother's rights after examining the applicable statutory criteria. See *In re A.D.T.*, 174 Vt. 369, 376-77, 817 A.2d 20, 26 (2002) (rejecting mother's argument that because father's parental rights had yet to be determined, family division erred in terminating her parental rights rather than allowing her to continue to work toward reunification). The court explained in its decisions that, unlike mother, father would most likely be able to resume his parental duties within a reasonable period of time, given his relatively short history of drug use and his demonstrated commitment to overcoming his addiction and caring for his son.

¶ 15. Mother argues, however, that even if her and father's circumstances are different, the family division's decisions still don't make any sense, given father's testimony that he plans to move in with mother as long as she remains drug free. We disagree. The court's findings show that mother and father were no longer living together and had not been living together for a significant period of time. Father was living with his sister at the time of the termination hearing. When asked whether he would be staying with mother in the future, father responded: "That's to be decided." Father's circumstances with respect to mother will undoubtedly be considered in upcoming hearings concerning father's parental rights. Speculation over whether father might move back in with mother is not a sufficient basis to reverse the family division's termination order with respect to mother.

¶ 16. This appeal is unusual in that, although C.F., through his attorney, initially filed the termination petition granted by the family division, he now joins mother's brief, arguing that the family division committed reversible error by terminating mother's parental rights without giving his attorney and his GAL an opportunity to take a position on whether termination was in his best interests. According to C.F., "[t]he court's total failure to consider C.F.'s position on the matter rendered the decision void." In C.F.'s view, the court's oversight resulted in its failure to consider "any of the favorable evidence that weighed against TPR, evidence that would have supported the GAL's and counsel's position on the matter."

¶ 17. ■ C.F. failed to appeal the family division's decision. In any event, there was no indication that C.F., through his attorney,

was taking a position at the proceedings other than in favor of terminating his parents' parental rights. C.F. notes his attorney's hesitation in filing the petition in the first place, but does not cite to anything in the proceedings after the filing of the petition to indicate that his attorney was backtracking from his support of the petition he had filed. Moreover, nothing in his attorney's examination of the witnesses at the termination hearing indicates a change of position.

¶ 18. Nor did family division preclude either C.F.'s attorney or his GAL from stating a position. At the close of the hearing, the court asked if there was "[a]nything further," and neither C.F.'s attorney nor his GAL indicated that they wanted to make a statement. Indeed, the first time this change of heart came to light was in the brief filed by C.F. in this appeal. C.F.'s attorney and GAL had an opportunity to make statements regarding C.F.'s interests, but did not do so. See V.R.F.P. 6(e)(3) (stating that GAL "may" state his or her position or opinion in certain juvenile proceedings based on evidence in record). Under these circumstances, assuming that he has standing and this Court has jurisdiction, C.F. waived the claim of error he raises for the first time in this appeal. Cf. *In re D.C.*, 2012 VT 108, ¶ 13, 193 Vt. 101, 71 A.3d 1191 (finding that mother waived right to challenge on appeal procedure in which she acquiesced at termination hearing).

*Affirmed.*