NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 48

No. 2019-106

In re G.B., Juvenile

Supreme Court

On Appeal from
Superior Court, Lamoille Unit,
Family Division

July Term, 2019


Amy M. Davenport, J. (Ret.), Specially Assigned

Allison N. Fulcher of Martin & Delaney Law Group, Barre, for Appellant.

Michael Rose, St. Albans, for Appellee.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **REIBER, C.J.**  Juvenile G.B., born in June 2017, appeals the court's order denying his petition to terminate mother's parental rights and directing the Department for Children and Families (DCF) to prepare a new disposition plan for mother. We dismiss the appeal for lack of a final judgment.

¶ 2.    In response to G.B.'s petition to terminate parents' parental rights and DCF's disposition report requesting the same, the court found the following. When G.B. was born, mother was residing at the Lund Family Center and had just participated in residential substance-abuse treatment. Mother was on medically assisted treatment and participating in parenting classes. After G.B. was born, Lund would not let mother return there after her hospital stay due to allegations that mother was participating in unsafe activities and placing other residents at risk.

Mother's then-attorney withdrew from representing mother and offered to have mother and G.B. live with her. The court granted conditional custody to mother's former attorney and ordered, among other things, that mother be supervised at all times, engage in her medically assisted treatment programming, engage in counseling, and provide random urinalysis tests (UAs). Although initially mother successfully parented G.B. in this situation for two months, eventually, tensions between mother and the conditional custodian, her former attorney, arose. These tensions culminated in an argument during which mother left the home with G.B. in violation of the conditional custody order. As a result, the court ordered mother to leave the home and prohibited her from having unsupervised contact with G.B. In September 2017, mother relapsed, and the court suspended visits.

¶ 3. In October 2017, the court held a merits hearing in G.B.'s case. The court found that G.B. was a child in need of care or supervision (CHINS) based on parents' mental-health issues, substance abuse, failure to consistently engage in parent-child contact, and father's criminal history. Father did not appear at the hearing; mother was briefly present. On November 8, 2017, G.B. filed a motion to terminate both parents' rights. On November 16, 2017, DCF filed a disposition plan with termination of parental rights as the goal. A disposition hearing was held at the end of November and neither parent attended. In November 2017, the court terminated parents' rights to their older child R.B., who was born in December 2015 and had been in DCF custody since birth based in part on mother's history of substance abuse and inconsistent contact as well as father's criminal history.

¶ 4. In June 2018, mother went back on medically assisted treatment and began seeing a therapist. She signed a release for DCF to see her UAs going forward. Her UAs from September to December were clean. Mother found housing and employment.

¶ 5. G.B. has been living with his custodians since August 2017. He is happy, healthy, well-adjusted, and attached to his custodians and their other children.

2

¶ 6. The court considered the best-interests factors as to each parent. The court granted the petition to terminate father's rights, concluding that he had not developed a relationship with G.B. and would not be able to assume parental duties within a reasonable period of time. As to mother, the court acknowledged that mother's relapse resulted in her not being able to play a constructive role in G.B.'s life for seventeen months. The court concluded, however, that mother was ready, willing, and able to resume a constructive role in G.B.'s life and that she "should be given the opportunity over the next six months to reunify with G.B." Therefore, the court denied the petition to terminate mother's rights. The court explained that the case was "still at disposition" and directed DCF to prepare a new disposition plan in light of the court's decision.

¶ 7. G.B. then filed a notice of appeal from the denial of the petition to terminate mother's rights. On appeal, G.B. argues that the court failed to view the question of whether mother would be able to parent within a reasonable period of time from the perspective of the juvenile.

¶ 8. As a threshold question, we address mother's motion to dismiss the appeal for lack of a final judgment. "An appealable order is one that finally disposes of the matter before the court by settling the rights of the parties on issues raised by the pleadings." In re A.D.T., 174 Vt. 369, 373, 817 A.2d 20, 24 (2002). In juvenile proceedings, the statute provides that disposition orders are final orders. 33 V.S.A. § 5318(d); see id. § 5315(g) (providing that merits adjudication is not final order subject to appeal). This Court has explained that where the court terminates one parent's rights, the order severs the legal relationship between that parent and the child and the order can be appealed as a final judgment, even if the rights of another parent are unresolved. In re A.D.T., 174 Vt. at 373-74, 817 A.2d at 24 (explaining that each petition to terminate "commences a new and separate proceeding").

¶ 9. The order juvenile seeks to appeal in this case—the denial of the petition to terminate mother's rights—is not final because it was neither a final judgment nor a disposition

3

order. The order denying termination of mother's rights did not finally resolve the status of mother's parental rights and therefore was not a final judgment. The family court specifically declined to issue a disposition order, indicating that the case was "still at disposition" and directing DCF to prepare a new case plan for G.B. Therefore, there was no disposition order to appeal. As we have explained, orders entered pending final disposition are "generally unappealable." In re I.B., 2016 VT 70, ¶ 7, 202 Vt. 311, 149 A.3d 160.

¶ 10. Juvenile contends the order is appealable and in support notes that this Court recently reviewed a family court order denying a petition to terminate the parental rights of one parent. In re N.L., 2019 VT 10, __ Vt. __, 207 A.3d 475. In In re N.L., this Court reversed the trial court's denial of the termination petition as to father because the findings did not support the conclusions of the court. Id. ¶ 13. We distinguish that case on several grounds. The most important difference is that in In re N.L., the family court made findings that are characteristic of a disposition order and did not reserve disposition to a later date. In In re N.L., the family court terminated mother's parental rights, denied termination of father's rights, continued the existing conditional-custody order, changed the caseplan goal,* and ordered parent-child contact. Id. ¶ 7. The family court expressly declined to require DCF to prepare a new case plan and did not reserve issues for further hearing. Although the decision does not say so specifically, by resolving custody, parent-child contact, setting a reunification goal, and adopting a case plan, the court essentially issued a disposition order. See 33 V.S.A. § 5318 (explaining that at disposition the court makes order related to legal custody and establishes permanency goal and case plan). Moreover, in In re N.L., the issue of finality was not raised or addressed.

---

    * As explained in In re N.L., we did not reach the question of whether the family court in In re N.L. had authority to impose a new case plan goal because the issue was not raised by the parties. 2019 VT 10, ¶ 18 n.1.

4

¶ 11. Because there was no final judgment in this case and juvenile did not seek permission for interlocutory review, we dismiss the appeal.

The appeal is dismissed for lack of a final judgment.

FOR THE COURT:

_____

Chief Justice